UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH BOOK, )<br>　　Plaintiff )<br>　　　　　　　　　　　　　　　　　)<br>VS )<br>　　　　　　　　　　　　　　　　　)<br>STATE TROOPER KURT M. )<br>FERRAZANNI, STATE TROOPER SMITH )<br>STATE TROOPER MCKENZIE, AND )<br>STATE TROOPER HENNIGAN )<br>　　Defendants ) | NO. 04-CV11557 |

___

DEFENDANTS' TRIAL BRIEF
___

Now come the defendants and respectfully submit this Trial Brief for the assistance of the Court.

I.　　SUMMARY OF THE FACTS

On June 6, 2001, the plaintiff, Joseph Book, was driving home after spending part of the day golfing at a club, the Thompson Club, where he was a member. Mr. Book, then aged 81, lived in Revere. He drove South on Route 1 and got in a line of cars to take the exit at Route 60. The exit lane veers to the right in an arc that leads on to Route 60. The time was 4:00 P.M. The weather was good, with a dry road and full sunlight.

Traffic was backed up from Route 60 for the entire length of the exit ramp and on to Route 1. The exiting traffic moved at a stop and go pace. Mr. Book was driving a Ford Explorer. He and his family will testify that he had no problems driving, no significant mobility problems and no other condition which affected his ability to drive.

At the top of the ramp Mr. Book came to a standstill. In front of him on his right was a motorcycle driven by Mr. Fabich. Directly in front of Mr. Book was a large Harley Davidson motorcycle driven by Mr. Rizzuti. In front of them was a line of stopped traffic. As the traffic started forward each of the vehicles began to move. Inexplicably Mr. Book sped up, hit Mr. Fabich's motorcycle knocking him off, and then ran into Mr. Rizzuti's motorcycle. Mr. Book pushed Mr. Rizzuti an estimated 45 feet, knocking the motorcycle down and ultimately pinning it and Mr. Rizzuti underneath Mr. Book's Ford Explorer. Mr. Rizzuti suffered multiple broken bones, and was ultimately pinned under the car for an extended period of time. He was initially attended by a nurse, Charlene McDonald, a passing motorist who stopped to assist.

State Police Trooper Kurt Ferrazzani was dispatched to the scene. Troopers George Smith and Albert McKenzie also responded. Trooper Paul Hennigan, who was headed North on Route 1, saw the commotion shortly after the accident occurred and was the first trooper on the scene.[1]

On arrival, Trooper Ferrazzani found Mr. Book still sitting in his car with Mr. Rizzuti pinned beneath it. Trooper Ferrazzani had to tell Mr. Book to get out of the car. Mr. Book's behavior was odd under the circumstances. When asked how the accident happened he stated he did not know, that he had a momentary lapse. He showed no concern over the fact that Mr. Rizzuti was still pinned under the car. To the contrary, Mr. Book's only concern was to get Mr. Rizzuti out so that he could go home. Mr. Book was asked to stand near the guard rail and wait while Trooper Ferrazzani assessed the scene

---

[1] Hennigan spoke to Mr. Rizzuti and Nurse McDonald and then began directing traffic for safety reasons. Smith was the last of the troopers present. He observed some of the interaction with Mr. Book but was not principally involved. Plaintiff has stated that he plans to dismiss the claims against Hennigan and Smith.

and spoke to other motorists who had stopped. Those that said they had witnessed the accident were similarly asked to wait near the guard rail.

Tprs. Ferrazzani, McKenzie and Smith will all testify that they smelled an odor of an alcoholic beverage coming from Mr. Book.[2] Tprs. Ferrazzani and McKenzie asked if he had been drinking. Mr. Book's answers were odd and evasive. He said maybe he had, maybe he hadn't. Maybe he had a sip of a friends drink, maybe not. When asked what that drink was he said maybe beer, maybe scotch. Tpr. Ferrazzani asked Tpr. McKenzie to give Mr. Book field sobriety tests. Mr. Book agreed to take the tests. Tpr. McKenzie will testify that he does not recall the tests that he gave, but presumes that they were the standard alphabet recital, heel to toe walk, and one legged stand while counting. Tpr. McKenzie does recall that Mr. Book failed each test.

Trooper Ferrazzani continued to take statements while the tests were given. Significantly, several eyewitnesses told him that the accident was caused by Mr. Book as outlined above. There is and was no reason to believe that these witnesses were not credible.[3] When Tpr. Ferrazanni returned to Mr. Book, Tpr. McKenzie advised him that Mr. Book had failed all of the field sobriety tests. Tpr. Ferrazzani also asked if Tpr. McKenzie had an opinion as to whether Mr. Book was under the influence of alcohol. Tpr. McKenzie replied that he believed Mr. Book was under the influence. Tpr. Ferrazzani, based on all of the evidence then known to him, concluded that there was probable cause to believe that Mr. Book was under the influence, and he placed Mr. Book

---

[2] Hennigan did not speak to Mr. Book.
[3] Mr. Book deposed several of the witnesses during the civil suit brought by Mr. Rizzuti, and had the names and contact information for the other witnesses.

under arrest for operating a motor vehicle while under the influence of intoxicating liquor (OUI).[4]

Pursuant to standard State Police practices, Mr. Book was handcuffed behind his back, placed in Tpr. Ferrazzani's cruiser and driven to the Revere State Police Barracks, less then ten minutes from the scene. Mr. Book was offered, and elected to take, a breathalyzer test. The test registered .00 blood alcohol. Pursuant to statute any individual registering less than a .05 is released and no charges are brought. Mr. Book called his wife from the barracks but declined to ask that she pick him up. Instead he asked that the State Police drive him home. Tpr. McKenzie did so a short time later. From the time of his arrest until the time the breathalyzer tests were read, and the charge consequentially dropped, was approximately one half hour.

Tpr. Ferrazzani stayed at the barracks completing his reports and preparing a list of names of the witnesses he spoke to at the scene. He also issued a citation to Mr. Book for operating to endanger[5], following too close and failure to use care in stopping.[6] After finishing the paperwork Tpr. Ferrazzani drove to Mr. Book's house and gave him accident report forms to be filled out, information on the other drivers, a list of the witnesses including contact information, and the citation.

Mr. Book retained counsel to defend against the citations. On January 30, 2003 he admitted to sufficient facts on the charge under C 90, §24 and the case was continued without a finding for six months. After six months all three charges were dismissed.

---

[4] Tpr. Smith will testify that he came to the same conclusion.
[5] The certified docket of the Massachusetts District Court lists the offense as Negligent Operation of a Motor Vehicle in violation of MGL c. 90,§24E.
[6] The first charge carries criminal penalties. The other two charges are civil infractions.

Mr. Rizzuti filed a civil suit against Mr. Book. He was represented by counsel throughout that proceeding, which settled only after discovery, including depositions of a number of witnesses, was complete. Book eventually settled that suit by paying Mr. Rizzuti $600,000.00, which included insurance of $250,000.00 and personal assets to cover the remainder.

Mr. Book has repeatedly alleged that he was prevented from interviewing other witnesses at the scene, and thereby deprived of finding that golden witness who would have proved the accident was not his fault. He further alleges that this witness would have spared him the need to admit to sufficient facts on the criminal charge or to pay that large cash settlement. He blames the defendant troopers for preventing him from finding his witness. Mr. Book also alleges that the troopers acted to protect Mr. Rizzuti because Mr. Rizzuti was a member of the Revere Police Force, and hence a member of the brotherhood that includes all police officers. Mr. Book asserts that he was arrested to make a case for Mr. Rizzuti, and, when that arrest would not stand up, that the other charges against him were manufactured.

Mr. Book filed his complaint pro se. It has never been amended despite the retention of several counsel subsequently. There are two counts: the first for common law false arrest and the second for an false arrest in violation of his Fourth Amendment rights and actionable under 42 USC §1983. There is no claim for conspiracy.

Mr. Book suffered no physical injury. He was under arrest for well under an hour. He has adduced no fact in response to discovery that shows any harm to his reputation or damage to his business attributable to being arrested or charged with traffic offenses. Mr.

Book has no facts that support an allegation that any of the troopers took any action out of a desire to help Mr. Rizzuti because he is a Revere police officer.

## II.  LEGAL ISSUES

The essence of both counts is whether there was probable cause to arrest Mr. Book on a charge of operating under the influence of alcohol at the time the arrest was made.  In fact limiting the trial to the issue pled, and to just the damages that are proximately caused by that false arrest, will significantly reduce the scope of this trial. Thus, it is important to start with what is not in the pleadings.  Again, there is no allegation of conspiracy.  There is no count alleging a constitutional claim related to a failure to investigate; no count claiming of a failure to disclose exculpatory evidence, and no count alleging a constitutional violation for manufacturing evidence or charges.  There is no excessive force claim.  There is no claim that he was denied medical treatment, and his assertion that he was denied "water and comfort" will not support such a claim. There are no common law claims for abuse of process, malicious prosecution, intentional infliction of emotional distress or any similar claim.  Mr. Book was only arrested on the OUI charge.  Therefore the other motor vehicle citations cannot be the basis for a false arrest claim, nor are they otherwise actionable.

If Mr. Book prevails his only damages are those which are proximately caused by that arrest.  Since the charges were dropped within the hour he was not obligated to hire an attorney or appear in court to defend against the OUI charge.  He has produced no evidence of any decline in his practice, let alone evidence that the decline was caused by

any action of the defendants.[7]  While Mr. Book's family will testify that he became fixated on this event, it is clear that fixation related to the fact that he was being sued for an amount far in excess of his insurance.

As to probable cause, the Court is fully aware of the principal that probable cause must be determined at the time of the arrest, and is unaffected by events that happen later. Police officers are held to a standard of an objectively reasonable person.  If a reasonable person could believe that a crime had been committed, and that the suspect committed it, then there is probable cause to arrest.  For both common law false arrest and false arrest in violation of the Fourth Amendment the subjective motivation of the officer is irrelevant.

Assessment of probable cause is made upon the facts known to the officers at the time.  There is probable cause to arrest "when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the Defendant had committed or was committing a crime".  The amount of evidence sufficient to find probable cause is far less than that required for a conviction.  The test for probable cause does not involve speculation about the outcome of a trial on the merits of a particular charge but rather upon an assessment of whether the knowledge of the arresting officer at the time of the arrest would be sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. Beck vs. State of Ohio, 379 U.S. 89 (1964).  "Probable cause determinations are, virtually by definition, preliminary and tentative." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir.2004).  The information known to the officer should be evaluated

---

[7] The Court is referred to defendants Motion in Limine, filed previously, which asks that plaintiff be precluded from offering evidence as to alleged business losses or medical injuries since he has never produced any business records, tax returns or medical records.

"in a common sense fashion, avoiding a hypertechnical, strained or grudging analysis". Commonwealth vs. Hason, 387 Mass. 169, 439 N.E.2d 251, 255 (1982); Commonwealth vs. Grammo, 8 Mass. App. 447, 395 N.E.2d 476, 480 91979); See also Commonwealth vs. Snow, 363 Mass. 778, 298 N.E.2d 804 (1973).

The officers may rely on their investigation, information they receive from other officers, statements of witnesses, statements of the suspect and the actions and demeanor of the suspect. Eyewitnesses interviewed at the scene are considered reliable. Commonwealth v. Martin, 2 Mass. App. Ct. 890 (1974); United States v. Ruede, 549 F.2d 865, 869 (1977). The reliability of eyewitnesses is further enhanced if the officer's own investigation corroborates the witnesses' statement. Draper v. United States, 358 U.S. 307, 313 (1959). A police officer may reasonably form the opinion that a person is intoxicated based upon his observations, including that the person has an odor of alcohol, has slurred speech or was unsteady. Commonwealth vs. Alano, 385 Mass. 871 (1983); Commonwealth vs. Gordon, 15 Mass. App. 901 (1982); Commonwealth vs. Otmishi, 398 Mass. 69 (1986); Commonwealth vs. Hilton, 398 Mass. 62 (1986); Petras vs. Storm, 18 Mass. App. 330 (1984).

Mr. Book's admission to sufficient facts on the charge of negligent operation of a motor vehicle is the equivalent of a guilty plea and is admissible against him. "An admission to sufficient facts may be introduced against the defendant in a subsequently litigated civil suit arising out of the same incident on the theory that the proceeding was the functional equivalent of a guilty plea, with the same degree of finality." Flannery, et al., Massachusetts Evidence (1999) § 3.5.1(b), citing to Davis v. Allard, 37 Mass.App.Ct. 508, 511, 641 N.E.2d 121 (1994). If not binding on its own, then the admission is strong

evidence of his acknowledgment of fault in this issue. Moreover, it would make it difficult to impossible to defend the civil suit brought by Mr. Rizzuti since it is an admission to at least negligence at the time of the accident.

There is no factual or legal support for Mr. Book's allegation that he was denied the right to find witnesses. He was given the name of six witnesses, none of whom support his claim that he was not at fault. In the five years since the accident he has not found any evidence or witness to show he was not at fault, despite the fact that he had the means and knowledge to hire investigators, he had the names of witnesses, and he had the powers of discovery, including deposition and subpoena, available in two suits. Mr. Book was also free to move about and speak to witnesses prior to Tpr. Ferrazzani's arrival. After that he was asked to wait by the side of the road, a request that did not preclude him from speaking to others that had stopped. To the extent that he was detained when questioning began in earnest, he is no different than any other motorist being questioned after a traffic stop or accident. Under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968), police officers may make an investigatory stop which does not amount to an arrest, even though it involves the detention of the individual. As in Terry stop, Mr. Book's liberty may be restrained during an initial inquiry regarding the cause of the accident. "An expeditious collateral inquiry which might result in the suspects' arrest or prompt release is not unreasonable when done to meet 'the practical demands of effective criminal investigation and law enforcement.'" Commonwealth v. Barros, 425 Mass. 572, 585 (1997); citing Commonwealth v. Salerno, 356 Mass. 642, 646-647 (1970); quoting Ker v. California, 374 U.S. 23, 34 (1963). Thus no rights were violated by the investigatory questioning of Mr. Book, even if this had the effect of keeping him from

freely wandering the accident scene in search of a witness.  The fact that several officers were involved and the investigation took some period of time makes it neither an arrest nor a violation of Fourth Amendment rights.  U.S. v. Quinn, 815 F.2d 153 (1st Cir. 1987) (Blocking suspects car and physical presence of five officers and delay of twenty five minutes did not make investigatory stop into de facto arrest.), U.S. v. Jackson, 918 F.2d 236 (1st Cir. 1990) (Blocking suspect's vehicle, approaching with drawn weapons, ordering suspect out and frisking him did not amount to arrest under the circumstances).

Although Mr. Book argues that the Defendants failed to investigate, and did so with ulterior motive, his complaint only alleges a false arrest.  There is no claim for alleged failure to investigate, assuming arguendo that such a claim exists, nor is there a claim for malicious prosecution.  He cannot attempt to try claims not pled.

Even had he pled malicious prosecution, a claim for malicious prosecution under 42 U.S.C. §1983 is quite limited.  The plaintiff must establish, as an element of the claim, that he was deprived of clearly established rights, privileges or immunities guaranteed by the Constitution or the laws of the United States.  Meehan v. Town of Plymouth, supra, at 88; Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 253-254 (1st Cir. 1996).  A plaintiff cannot assert that malicious prosecution constituted a deprivation of procedural due process rights if an adequate state remedy is available for that claim. Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 43 (1st Cir. 1994); Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 410-411 (1st Cir. 1990); Coogan v. City of Wixom, 820 F.2d 170, 174-175 (6th Cir. 1987); Johnson v. Barker, 799 F.2d 1396, 1400 (9th Cir. 1986). Massachusetts tort law affords an adequate remedy for malicious prosecution.  Since an adequate state law remedy is available, Plaintiff may not bring a procedural due process

claim for malicious prosecution under 42 U.S.C. §1983. Moreover, issuance of a citation for other charges is not an arrest or deprivation of liberty and therefore not actionable under a theory of false arrest. Meehan v. Town of Plymouth, 167 F.3d. 85 (1st Cir. 1999)

There is, of course, no end to what a third party may suggest or require of investigation. Having determined that probable cause existed, police officers are not required to investigate every theory of the accused just because the accused clings to some belief that more investigation will turn up something to help his case. If a prosecutor for the Commonwealth is not required, at any point, prior to trial, "to investigate every possible source of exculpatory information on behalf of the defendant," Commonwealth v. Beal, 429 Mass. 530, 532 (1999), the police are certainly not required to do so at arrest.

> When arrest is pursuant to warrant,
>
> A Fourth Amendment violation may be established if a [plaintiff] can show that officers acted in reckless disregard, with a 'high degree of awareness of [the] probable falsity' " of statements made in support of an arrest warrant. Forest v. Pawtucket Police Dep't, 377 F.3d 52, 58 (1st Cir.2004) (citation omitted), cert. denied, --- U.S. ----, 125 S.Ct. 1315, 161 L.Ed.2d 111 (2005). Similarly, the intentional or reckless omission of material exculpatory facts from information presented to a magistrate may also amount to a Fourth Amendment violation. DeLoach v. Bevers, 922 F.2d 618, 622 (10th Cir.1990)

Burke v. Town Of Walpole, 405 F.3d 66 (1st Cir. 2005). Even then, the plaintiff must establish that the false statements were material, in that their omission would *eliminate* the existence of probable cause. Id., at 82, citing Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)(Emphasis supplied). Similarly, while access to witnesses is a right afforded to defendants in the preparation of trial it is incumbent upon the defendant to show how he was prejudiced. Frazier v. State, 142 Miss. 456, 461; Atkins v. State, 115 Ohio St. 542, 549-554, cert. den. 274 U.S. 720. No such showing

can be made here.  In fact, Plaintiff will make no showing of any false statement, no showing of reckless disregard for any fact, no showing of any intentional omission of any fact, and no showing of any prejudice or the destruction of probable cause.

These points are critical to an issue raised by the Court.  As a matter of proof, Mr. Book cannot establish any harm unless he can show that he would have found his exculpatory witness with some fuller investigation.  This he cannot do.  It is not enough to speculate that there may have been some helpful witness, particularly here since there are witnesses who saw the accident, who told the officers at the scene that Mr. Book caused it, and who subsequently testified in deposition, under oath, that he caused it.

Finally, defendants would be entitled to qualified immunity.  The test of immunity is an objective one.  The officer will be immune unless it is obvious that no reasonably competent officer could have concluded that he had the right to take the action he did.  If officers of reasonable competence could disagree on this issue, immunity should be recognized.  The standard gives ample room for mistaken judgments.  Qualified immunity protects all but the plainly incompetent.  Officials are immune unless the law clearly prohibited the actions they took.  Harlow vs. Fitzgerald, 457 U.S. 800, 818 (1982); Malley vs. Briggs, 475 U.S. 335;  Davis vs. Scherer, 468 U.S. 183, 191 (1984).  In this case if the troopers could reasonably have believed that probable cause to arrest existed they will be entitled to qualified immunity.  As long as probable cause is at least arguable, the officer will not be held liable for claims arising out of false arrest, imprisonment, or detention.  Hall vs. Ochs, 817 F.2d 920, 925 (1st Cir. 1987), citing Floyd vs. Farrell, 765 F.2d 1 (1st Cir. 1984).

       Respectfully submitted,

       Defendant Kurt Ferrazanni
       By his counsel,


       /s/ Brian Rogal
       Brian Rogal, Esquire
       BBO No. 424920
       160 Gould Street, Suite 111
       Needham, MA  02494
       781-455-8964

       Defendants McKenzie, Smith and
       Hennigan,
       By their counsel,


       /s/ Timothy M. Burke
       Timothy Burke, Esquire
       BBO No. 065720
       160 Gould Street, Suite 111
       Needham, MA  02494
       781-455-0707


<u>Certificate of Service</u>

Service is made via the Court's ECF notification system.