UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH BOOK )<br>)<br>Plaintiff, )<br>)<br>) <br>v. )<br>)<br>DEPT. OF STATE POLICE, ET AL )<br>)<br>Defendant. )<br>) | C.A. NO. 04CV-11557-RCL |

**PLAINTIFF'S PRE-TRIAL MEMORANDUM**

Plaintiff Joseph Book ("Book") submits the following Pre-Trial Memorandum in accordance with this Court's Pre-Trial Order dated February 28, 2006.

A.    **Names, Addresses and Telephone Numbers of Trial Counsel**

Plaintiff's Counsel

Christopher H.M Carter, Esq., Counsel for Plaintiff
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000

Defense Counsel

Brian Rogal, Esq., Counsel for Defendant Kurt Ferrazanni
160 Gould Street, Suite 111
Needham, MA 02494
(781) 455-8964

Timothy M. Burke, Esq., Counsel for Defendants McKenzie, Smith and Hennigan
160 Gould Street, Suite 111
Needham, MA 02494
(781) 455-0707

#615654

**B.     Summary of Positions Asserted by the Plaintiff**

Plaintiff asserts that he was falsely arrested and that the Defendants violated his Constitution Rights as a citizen under 42 U.S.C. § 1983.

**C.     Waiver of Claims**

The Plaintiff has agreed to dismiss the claims against Defendant Smith and Defendant Hennigan.

**D.     Statement of Undisputed Facts[1]**

1.      At approximately 4:00 PM on June 6, 2001, Plaintiff was involved in a motor vehicle accident with a motorcycle operated by an off-duty Revere Police Officer, Joseph Rizzutti. The accident occurred at the top of the off-ramp connecting the Route 1 and Route 60 in Revere.

2.      Immediately prior to the accident, Plaintiff had been driving South on Route 1 in a Ford Explorer. The traffic was backed up on the Route 60 exit ramp, and was moving at a stop and go pace. Plaintiff was traveling no more than 5-10 mph.

3.      While Plaintiff was proceeding down the Route 60 exit ramp, the left, passenger side of his Ford Explorer came into contact with a motorcycle operated by Craig Fabich, then of Winthrop, MA. Fabich was not injured. An instant later, the front, driver side of his Ford Explorer came into contact with a second motorcycle, operated by Rizzutti. Plaintiff's Ford sustained nominal damage to its front bumper. After the incident, the right front tire of the Ford was found to be flat.

---

[1] The facts set forth below are those that, Plaintiff believes, are not contested. Before the start of trial, Plaintiff will confer with Defendants' counsel to reach agreement on a list of stipulated facts.

#615654

4. As a result of the incident, Rizutti and his motorcycle were pinned beneath the front of Plaintiff's Ford Explorer. Rizutti was injured, although his injuries were not visible at the scene.

5. Defendant Kurt Ferrazanni, then a Trooper with the Massachusetts State Police, was in charge of investigating the cause of the incident. He arrived at the scene minutes after the incident occurred.

6. Soon after arriving at the accident scene, Ferrazanni spoke with Plaintiff, who was then sitting in his Ford Explorer. Ferrazanni directed Plaintiff to exit his vehicle. Ferrazanni segregated Plaintiff from the other individuals at the scene, including potential witnesses, and told him to stand by the railing along side the breakdown lane.

7. Ferrazanni questioned Plaintiff about how the accident occurred. Plaintiff informed Ferrazanni that he had been in stop-and-go traffic, following behind another vehicle, and that he did not know where Rizzutti's motorcycle came from.

8. After questioning Plaintiff, Ferrazanni assigned Defendant Al McKenzie, also a State Police Trooper, to give Plaintiff a sobriety test.

9. McKenzie asked Plaintiff to perform field sobriety tests. McKenzie did not take notes of Plaintiff's performance on the tests, and did not prepare a police report addressing this matter.

10. McKenzie reported back to Ferrazanni that Plaintiff failed the test. Ferrazanni was not aware of what test(s) were given to Plaintiff, or of the results of the test(s).

11. While still at the accident scene, Ferrazanni arrested Plaintiff and charged him with operating under the influence of alcohol ("OUI"). At that time, Ferrazanni did

not charge Plaintiff with any other offenses. He then handcuffed Plaintiff, placed him in a police cruiser, and transported him to the State Police Barracks in Revere.

12.     At the State Police Barracks, Plaintiff consented to the officers' request that he take a breathalyzer test. The test registered an alcohol level of 00.00.

13.     Based on the results of the breathalyzer test, Defendants could not proceed with an OUI charge. However, Defendants informed Plaintiff that they were going to charge him with operating to endanger.

14.     Defendants subsequently charged Plaintiff with operating to endanger, as well as following too close and care in stopping.

### E.    Contested Issues of Fact

In addition to the facts set forth above, Plaintiff intends to prove the following:

1.      As of June 6, 2001, Plaintiff Joseph Book, age 80, was a practicing attorney who had worked in Boston for approximately 30 years. He and his wife, Helena, had been married for 43 years. They lived in Revere, where they had raised their four children. Plaintiff had no criminal record whatsoever. He also held a valid Massachusetts drivers license, had an unblemished driving record and had not been involved in any motor vehicle incidents of note.

2.      Although Plaintiff was 80 years old, he still practiced law, albeit on a reduced scale, and maintained a vigorous, active lifestyle. Plaintiff jogged, worked out regularly at his gym, and in seasonal weather played golf twice a week at the Thompson Country Club in North Reading.

3.      On the morning of June 6, 2001, Plaintiff played a round of golf at the Thompson Country Club, and returned home via Route 1 South. Plaintiff had not

#615654

consumed any alcohol, and was not impaired in any way. Traffic was extremely heavy as Plaintiff approached Route 60 in Revere at about 4:00 PM. Cars were backed up on the off-ramp connecting Route 1 South to Route 60. The single lane of traffic on the off-ramp moved intermittently. When the vehicles did move, they proceeded at a rate of no more than 5-10 mph.

4. When Plaintiff exited Route 1 and entered the off-ramp, he was following followed immediately behind a truck that was towing a Jeep. No motorcycles were in front of Plaintiff. Further, since the off-ramp allowed for only a single lane of traffic, it was impossible for the vehicles to legally pass each other.

5. As Plaintiff proceeded down the off-ramp, the left, passenger side of his Ford Explorer came into contact with a motorcycle operated by Craig Fabich. Fabich was not injured. An instant later, the front, driver side of his Ford Explorer came into contact with a second motorcycle, operated by Rizzutti.

6. Plaintiff did not see the motorcycles before the contact occurred, because the motorcycles had not been in front of him. Based on the totality of the evidence, the only plausible explanation is that Rizzutti and Fabich themselves were operating unlawfully and negligently at the time of the incident by swerving in and out of the line of cars and trucks on the off-ramp.

7. Following the accident, traffic came to complete standstill on the Route 60 exit ramp. A number of people crowded around the accident scene. One on-looker, an off-duty nurse named Charlene McDonald, attended to Rizutti. McDonald did not witness the accident. Rizutti informed her that he was an off-duty Revere Police Officer. When members of the Massachusetts State Police arrived a short time later, McDonald

#615654

informed them that the injured person was a Revere Police Officer. This information had a profound affect on the manner in which Ferrazzani and the other troopers who responded to the scene approached their investigation into how the incident occurred. Quite simply, they sought to assist Rizitti by creating an evidentiary record to show that Plaintiff was entirely at fault for causing the accident.

8. The evidence will show that Ferrazzani and the other troopers focused immediately and exclusively on Plaintiff as the cause of the accident. They did not so much as entertain the possibility that Rizzutti might have caused the incident by swerving in and out of the single lane of traffic. Notably, as of the point in time when Ferrazzani arrested Plaintiff and changed him with OUI, he had not asked a single witness or bystander whether Rizzutti and Fabich had swerved in and out of traffic and cut in front of Plaintiff. Ferrazzani never sought, or obtained, information to answer this question. However, he later admitted that if Rizzutti had cut in front of Plaintiff's car, Rizzutti, not Plaintiff, would bear responsibility for the accident.

9. Moreover, the manner in which Ferrazzani and McKenzie conducted the field sobriety tests, and performed other aspects of their investigation, was improper. For example, McKenzie kept no record of, and could not recall, which tests he administered. He did not inform Ferrazzani what tests had been given, or the results of the same, and Ferrazzani did not request this information before he made the decision that probable cause existed to charge Plaintiff with OUI. The absence of detail about the tests is critical, since the troopers conceded that they would have to adjust their interpretation of a suspect's performance on a particular field sobriety test based on the suspect's age,

#615654

agility, and health. Ferrazzani also kept no notes or any other record of what the four individuals whom he identified as witnesses in his police report said.

10.   Although four troopers were involved in responding to the incident, only Ferrazzani generated reports describing the facts obtained during the investigation. Even those reports are not consistent or credible. Plaintiff will establish that Ferrazzani slanted the facts once it was established, as a matter of objective proof, that Plaintiff was not intoxicated and did not have a *trace* of alcohol on his breath. At that point, rather than concede what was obvious – that Plaintiff never should have been arrested – Ferrazzani charged Plaintiff with operating to endanger, following too close, and care in stopping. Again, when Ferrazzani filed these brought these charges, he could not articulate any facts to show that Plaintiff had been at fault for the accident.

11.   Defendants' conduct had a devastating effect on Plaintiff. A man who had previously led a vigorous and, by all accounts, happy life became overwhelmed with the stress, humiliation, and legal consequences of the false arrest. Plaintiff and his family, will present testimony as to how Plaintiff lost the ability to enjoy his family, including his grandchildren, and became consumed with the event of June 6 and their aftermath, to include a criminal prosecution, which ultimately was resolved through a continuance without a finding, and a civil suit brought by Rizzutti.

**F.    Jurisdictional Questions**

N/A

**G.    Questions Raised by Pending Motions**

The following Motions *in Limine* filed by the Defendants are pending:

    11/21/06 Motion *in Limine* to preclude introduction of breathalyzer results;

#615654

11/21/06 Motion *in Limine* to Preclude Expert Testimony;

11/21/06 Motion *in Limine* to Preclude Plaintiff From Attempting to Introduce any Reference to any Disciplinary Records of Defendants; and

11/21/06 Motion *in Limine* to Preclude Plaintiff from Introducing Evidence of Itemized Damages or Medical Records or Alternatively to Compel Their Immediate Production

Plaintiff does not intend to call any expert witnesses. Plaintiff will respond to the other motions before November 21, 2006.

**H.   Issues of Law**

See Motions *in Limine* referenced in section G, above.

**I.   Requests for Amendments to Pleadings**

N/A

**J.   Additional Matters to Aid in the Disposition of the Action**

N/A

**K.   Probable Length of Trial**

The Plaintiff estimates that trial in this matter will take 4-6 half days.

**L.   Plaintiff's List of Witnesses**

Joseph Book, Revere Massachusetts

Helana Book, Revere Massachusetts

Michael Book, Watertown Massachusetts

Joseph Murray, Esq., Boston, MA

Joseph Bolero, Esq., Boston, MA

Jonathan Book, Boston, Massachusetts

State Trooper Kurt M. Farrazanni, ID No. 2355

State Trooper Al MacKenzie, ID No. 1138

#615654

State Trooper George Smith, ID No. 2586

State Trooper Paul Hennigan, ID No. unknown

### M. Plaintiff's Proposed Exhibits

Plaintiff's respectfully seeks leave to file an itemized list of proposed exhibits prior to trial.

### N. Plaintiff's Proposed Jury Instructions (See Appendix: Plaintiff's Proposed Jury Instructions)

### O. Plaintiff's Proposed *Voir Dire* Examinations

1. Are any of your friends or family members police officers or members of law enforcement?

2. Have you ever been arrested or stopped for questioning by the police?

3. There will be testimony in this case by members of the Massachusetts State Police and the Revere Police. Are you aware of any reason why you might lend more or less credence to a witness' testimony because that witness is a police officer or a member of law enforcement?

4. Have you ever been involved in a motorcycle accident?

5. Have you ever been involved in an automobile accident?

Respectfully submitted,

JOSEPH BOOK

By his attorneys,

November 21, 2006

/s/ Christopher H.M. Carter
Christopher H.M. Carter
BBO #561146

#615654

Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
ccarter@haslaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


_____/s/ Christopher H.M. Carter_____

#615654