UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH BOOK            )
    Plaintiff,         )
                                )          CIVIL ACTION
v.                     )        NO.   04-11557
                                )
KURT M. FERRAZZANI, ET AL,  )
    Defendants         )

### DEFENDANTS' MOTION FOR ATTORNEYS' FEES
### PURSUANT TO 42 U.S.C. §1988 AND
### RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Now come both Defendants and move that this Honorable Court award Defendants reasonable attorneys' fees to be paid by the Plaintiff. In support whereof, Defendants show:

1. The award for attorneys' fees to a prevailing party in a lawsuit brought pursuant to 42 U.S.C. §1983 is authorized by 42 U.S.C. §1988, the Civil Rights Attorney's Fees Award Act of 1976.

2. The Defendants were the "prevailing parties" within the meaning of the act.

3. Plaintiff's claim regarding false arrest was frivolous, unreasonable and groundless as shown more fully in Defendants' Memorandum in Support of This Motion. Attorneys' fees, therefore, are appropriate under <u>Christianburg Garment Company vs. E.E.O.C.</u>, 98 S.Ct. 694, 700 (1978). Moreover the actions of Plaintiff and his counsel, and their pursuit of irrelevant matters, greatly expanded the scope and time of discovery, pre-trial preparation and trial.

4.  The award of attorneys' fees is further authorized pursuant to Rule 11 of the Federal Rules of Civil Procedure as this action was not grounded in fact, was not warranted by existing law, and was advanced to harass the Defendants, rather than for any legitimate purpose. Moreover, Plaintiffs and their counsel failed to make the reasonable inquiry into the facts and law that is required by Rule 11.

5.  Defendants further rely on their brief and affidavit.

WHEREFORE, Defendants move that the Court impose attorneys' fees on Plaintiff and his attorneys in an amount equal to $93,777.00. If the Court allows this Motion, then Defendants will submit a detailed itemization of their time.

Respectfully submitted,
For the defendant Al MacKenzie,
By his attorney,

/s/ Timothy M. Burke
Timothy M. Burke, Esq.
BBO# 065720
LAW OFFICES OF TIMOTHY M. BURKE
160 Gould Street, Suite 111
Needham, MA 02494-2300
(781) 455-0707

Respectfully submitted,
For the defendant Kurt Ferrazzani,
By his attorney,

/s/ Brian Rogal
Brian Rogal, Esq.
BBO# 424920
LAW OFFICES OF BRIAN ROGAL
160 Gould Street, Suite 11
Needham, MA 02494-2300
(781) 455-0707

Certificate of Service

Service is made via the Court's ECF notification system.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH BOOK                       )
    Plaintiff,                   )
                                 )   CIVIL ACTION
v.                                )   NO.   04-11557
                                 )
KURT M. FERRAZZANI, ET AL,        )
    Defendants                   )

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR ATTORNEYS' FEES
PURSUANT TO 42 U.S.C. §1988 AND
RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Plaintiff's complaint was premised solely upon false arrest and primarily pursued as a Fourth Amendment claim under 42 U.S.C. §1983. However, the Plaintiff litigated and tried this claim based upon theories that the Defendants limited and designed their investigation at the scene of the accident in order to make it possible for Joseph Rizzutti to bring a civil action against the Plaintiff. The Plaintiff came to trial seeking to recoup the $600,000.00 he paid to Mr. Rizzutti to settle that suit. Plaintiff also sought damages for being forced to defend against the motor vehicle charges brought against him, despite the fact that he had admitted to sufficient facts on the most serious of those charges. He sought emotional distress damages for the massive changes to his life that he alleges were brought on by the large civil suit against him[1] and by his decision to fight the motor vehicle charges. Plaintiff knew, and his counsel knew, or with any reasonable investigation should have known, that these theories were not compensable as part of the false arrest claim that he filed and that they were absolutely false and without merit.

---

[1] His wife referred to Mr. Rizzutti's suit as one designed to cause them financial ruin.

Nevertheless, Plaintiff pursued these claims to trial, and continued to attempt to interject them despite the Court's rulings to the contrary.

Even the false arrest claim was patently frivolous. Plaintiff never denied the fact that he had no explanation for how the accident occurred. His wife and his son testified that he still did not know how it occurred. At the scene the plaintiff was unable to explain how he ran over Mr. Rizzutti, clad in a reflecting jacket, and sitting on a large Hartley Davidson motorcycle, in traffic described by the plaintiff as stop and go and moving only 2-3 miles per hour. Given those facts anyone would conclude that the plaintiff was impaired. The defendants testified that they smelled an odor of an alcoholic beverage, and the plaintiff concedes that he told the police at least once that he had a sip of alcohol; either a beer or hard liquor. Those facts would have been enough for a police officer to have probable cause that the plaintiff's impairment was due to the consumption of alcohol even if the plaintiff had refused all field sobriety tests.

At trial plaintiff offered a version of how the accident occurred that was both wholly incredible and completely at odds with his statements at the scene that he did not know how the accident occurred. Plaintiff testified that he did not see Mr. Rizzutti's motorcycle until he felt the bump of hitting it. Plaintiff testified that the motorcycle then sped up, that it hooked his bumper, that it dragged his "3000" pound Explorer forward despite the fact that plaintiff kept his foot on the brake, and that when the motorcycle finally fell over his Explorer inexplicably ran up and on to Mr. Rizzutti and the motorcycle despite the fact that the plaintiff kept his foot on the brake. This story is an obvious fabrication since it is factually impossible, and given that the plaintiff's family concedes that he does not know how the accident happened and that the plaintiff admitted at the time of the accident that he had no idea how it occurred. In addition, the plaintiff

had no idea at the scene that he had hit the other motorcyclist, Mr. Fabice, but claimed at trial to have seen, but not hit, him.

The Court must also note that the plaintiff, who is an attorney and who has two sons who are attorneys, was represented by highly competent counsel both in the defense of the motor vehicle charges and in the defense of Mr. Rizzutti's suit. On the motor vehicle charges he would have received the disclosure of all statements and reports of the police. He had the names of all witnesses. The plaintiff deposed or spoke to those witnesses during Mr. Rizzutti's civil suit. The plaintiff conceded that one of his counsel used a private investigator. Thus, the plaintiff knew long before this trial started that all of the witnesses to the accident confirmed that Mr. Rizzutti had been in front of him and that the plaintiff was at fault in the accident. He had already had full discovery before he started this action. The plaintiff paid a $600,000.00 settlement of which $400,000.00 was insured and the balance came from his own pocket. Neither the plaintiff nor his insurer would have paid that kind of money without full discovery and complete realization that they had no defense to the personal injury action.

The plaintiff is also disingenuous in trying to avoid the effects of his plea to sufficient facts. Plaintiff was a general practitioner whose practice included the defense of some operating under cases. He must have been aware of the effect of a plea to sufficient facts: an attorney could not practice in the Massachusetts criminal courts without being aware of the effect of such a plea. The plaintiff had two attorneys representing him when he entered his plea, including the well known criminal defense attorney Joseph Balliro. He signed the plea offer form acknowledging that he understood his plea and that it had been explained to him be his counsel. Plaintiff's counsel signed a similar certification, and the Judge in that case specifically found that the plaintiff had

made a knowing and voluntary waiver of his rights. Yet, the plaintiff suggested that he did not understand what he was signing, and a great deal of time was wasted in this case with plaintiff and his current counsel arguing that he was not bound by his plea. In fact, the motor vehicle charges and the plea were irrelevant to the false arrest case, and should never have been introduced into this case by the plaintiff or his counsel.

While plaintiff filed this case pro se, he subsequently hired and discharged two attorneys before trial counsel took the case on. Trial counsel, Christopher Carter, is an experienced litigator from a large, well known Massachusetts firm. It should be presumed that he reviewed the case, as he had an obligation to do, before agreeing to take it forward. Mr. Carter conducted the discovery in this case, including taking the depositions of all four of the original police defendants. He spent approximately eight hours on the deposition of Mr. Ferrazzani. Mr. Carter also answered discovery on the plaintiff's behalf, and was thus well aware that the plaintiff had produced no tax returns or any other evidence from which lost business revenues might be alleged or determined. Mr. Carter obviously made the decisions to pursue this case, including the pursuit of damages for the settlement with Mr. Rizzutti, alleged lost business revenues, alleged damage to reputation and the cost and consequential damages for defending the motor vehicle charges. Reasonable and diligent investigation would have demonstrated to Mr. Carter that these claims could not be pursued in a case for false arrest based on the operating under the influence charge. Reasonable and diligent investigation would have also revealed that the plaintiff had no reasonable basis to proceed on his claim for false arrest.

The conduct of counsel during trial must also be considered. Counsel protracted this case by continuing to argue for the introduction of irrelevant evidence. However, the

most egregious action of Mr. Carter was his intentional misleading of the Court and counsel during his cross examination of Mr. McKenzie. We will summarize the facts only briefly since the Court held two conferences to investigate them. Mr. Carter went to Mr. McKenzie with a one page document in one hand and a manual in another. He gave only a copy of the one page document to Mr. Ferrazzani's counsel: Mr. Carter did not even offer that document to Mr. Burke. The one page document suggested it was a student manual given to the State Police. When questioned, Mr. Carter said he got it off of the State Police web site. That claim was false. Mr. McKenzie could not identify the one page document, but he was asked several questions about it. Mr. Carter never showed him the manual, although he had it in his hand as he went to the witness box. Mr. Carter then began reading from the manual, asking Mr. McKenzie if he agreed with the text of the manual. Mr. Carter intentionally created the impression that he was reading from a manual used by the State Police to teach the proper procedures for giving field sobriety tests. After several questions and objections counsel for defendants realized that the manual was not one used by the State Police. During an extensive side bar Mr. Carter still referred to it as "your" document, suggesting again that it was used by the State Police. When the Court asked Mr. Carter directly, he stated that the manual was a 1981 report from a federal agency, and not a document used by the State Police. Mr. Carter maintained that he had not intended to mislead anyone, and maintained that position through a second conference in chambers on the following day.

Counsel for defendants have never before seen an attorney attempt to show only one page of a document, or attempt to mislead the jury, the Court and counsel as to the identity of a document. Mr. Carter's entire use of the document was inappropriate. As noted by the Court, he never attempted to lay any foundation for the document that he

had, nor did he attempt to use it in any proper fashion. The Court reserved its opinion on defendants' motion for sanctions on this issue. Defendants renew that motion and move that sanctions against Mr. Carter include the award of attorney's fees.

In summary, plaintiff and his counsel's continued pursuit of issues that were not in this case greatly expanded discovery, pre-trial preparation[2], and the trial of this case. The action for false arrest was itself frivolous given the admitted facts. However, if plaintiff had limited the case just to that arrest and any damages that might have flowed from being in custody for approximately an hour, this would have been a short trial. Of course, damages would have been so minimal that the trial would not have been likely to go forward. Given that plaintiff continuously injected issues that were not relevant to the action for false arrest, and given the actions of counsel in this matter, defendants should be awarded their attorneys fees.

I.    LEGAL STANDARDS FOR AWARD OF ATTORNEYS' FEES TO DEFENDANT

Defendants seek an award of attorneys' fees pursuant to 42 U.S.C. §1988, and Rules 11 and 54 of the Federal Rules of Civil Procedure. The plaintiff's conduct in this case goes to the core of the statute and to Rule 11. That core requires that claims not be brought or pursued where they are frivolous, groundless or not brought in good faith.

Rule 11 requires that the pleader make a reasonable inquiry, that the pleadings be "well grounded" in fact to the best of the signer's knowledge, and that they not be imposed for an improper purpose, such as to harass. The standard is one of objective reasonableness. Ballard's Service Center, Inc. vs. Transue, 865 F.2d 447, 449 (1st Cir.

---

[2] As examples, there was the lengthy deposition of Mr. Ferrazanni and the only slightly quicker deposition of Mr. McKenzie; the naming of three of plaintiff's former counsel as witnesses; the fact that plaintiff was seeking damages for paying the settlement required defendants to prepare to bring in witnesses to the accident and prepare a case that included proving plaintiff's fault in that accident.

1989). Subjective good faith is not a defense nor is a finding of bad faith required. Id. Attorneys' fees have been assessed against a party or his attorney "who irresponsibly initiates and/or litigates a cause of action. Id., citing Kale vs. Combine Ins. Co. of America, 861 F.2d 746, 756 (1st Cir. 1988).

Attorneys' fees may be imposed even upon a pro se plaintiff. Patterson vs. Aiken, 841 F.2d 386, 387 (11th Cir. 1988); United States vs. Hansen, 795 F.2d 33 (7th Cir. 1986); Rivera Carbana vs. Cruz, 588 F.Supp. 80, 83 – 84 (P.R. 1984); Anderson vs. Glismann, 577 F.Supp. 1506 (D. Colo. 1984). Where a person persists in litigation long after a reasonable person would know the matter was hopeless, costs should be imposed. Wang vs. Gordon, 715 F.2d 1187, 1190 – 1191 (7th Cir. 1983). Moreover, sanctions may be imposed if only one portion or one count of pleading violated Rule 11. Patterson vs. Aiken, supra.

42 U.S.C. §1988 provides that "the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorneys' fees as part of the costs." Where the prevailing party is a defendant, the court may assess fees against the plaintiff upon a finding "that the plaintiff's action was frivolous, unreasonable, or without foundation." Hughes vs. Rowe, 449 U.S. 5, 14 (1980), quoting Christianburg Garment Co. vs. EEOC, 434 U.S. 412, 421 (1978). Where suit is instituted upon unfounded factual allegations, Courts have awarded defendant's attorneys' fees under 42 U.S.C. §1988. Beard vs. Annis, 730 F.2d 741 (11th Cir. 1984); Scarselli vs. New York Telephone Co., 578 F.Supp. 399 (S.D.N.Y. 1984); Neidhardt vs. D.H. Holmes Company, 583 F.Supp. 1271 (E.D.L.A. 1984); Smith vs. Smythe, Cramer & Co., 571 F.Supp. 58 (N.D. Ohio 1983).

M.G.L. c. 231, §6(f) provides a basis for the award of attorneys' fees where a

claim is frivolous.

> A Court may award reasonable counsel fees and other costs and expenses to a party when it.. . .determines, after a hearing, ...that all or substantially all of the claims, defenses, set off s or counterclaims whether a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith....

III.    CONCLUSION

As demonstrated above, the conduct of the plaintiff and his counsel violates Rule 11, and justifies an award of attorneys' fees under 42 U.S.C. §1988. Defendants should be awarded the full amount of their attorneys' fees.

Respectfully submitted,
For the defendant Albert McKenzie,
By his attorney,

/s/ Timothy M. Burke
Timothy M. Burke, Esq.
BBO# 065720
LAW OFFICES OF TIMOTHY M. BURKE
160 Gould Street, Suite 111
Needham, MA 02494-2300
(781) 455-0707


Respectfully submitted,
For the defendant Kurt Ferrazzani,
By his attorney,

/s/ Brian Rogal
Brian Rogal, Esq.
BBO# 424920
LAW OFFICES OF BRIAN ROGAL
160 Gould Street, Suite 11
Needham, MA 02494-2300
(781) 455-0707


Certificate of Service

Service is made via the Court's ECF notification system.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH BOOK,                                )
    Plaintiff                               )
                                            )
VS                                          )        NO. 04-CV11557
                                            )
STATE TROOPER KURT M.                       )
FERRAZANNI, STATE TROOPER SMITH             )
STATE TROOPER MCKENZIE, AND                 )
STATE TROOPER HENNIGAN                      )
    Defendants                              )

---

### AFFIDAVIT IN SUPPORT OF MOTION FOR ATTORNEY'S FEES
---

    1.    Timothy M. Burke, was General Counsel for the State Police Association of Massachusetts and has represented numerous officers in civil rights suits for over twenty years.

    2.    Timothy M. Burke represented Defendant Al McKenzie in this action.

    3.    Timothy M. Burke has been a practicing attorney since January of 1977. He was formally an Assistant District Attorney in Suffolk and Middlesex Counties for a total of approximately eight years. During that time period, he prosecuted approximately thirty-five murder cases and approximately seventy-five major felony cases. In 1985, he began his private law practice presently located at 160 Gould Street, Needham, Massachusetts. Since that time, he has been engaged in representing clients in both civil and criminal matters.

    4.    Timothy M. Burke's regular hourly rate for representation in complicated criminal and civil actions is $300.00 per hour.

    5.    Attorney Brian Rogal was admitted to practice law in both Massachusetts and Georgia in 1977 and subsequently to the Federal District and Appellate Courts in both states.

    6.    Brian Rogal represented Defendant Kurt Ferrazzani in this action.

    7.    Brian Rogal's experience included five years with a legal services program, two and one-half years as a senior trial counsel with the Massachusetts

Commission Against Discrimination, and two years of private practice restricted to labor law.  Since 1986 he has been engaged in general practice of which a substantial portion of his time was devoted to defending police officers in civil rights cases.

8. Brian Rogal regularly charges clients hourly fees of $250-300 per hour.

9. Attorney Joseph Kittredge was admitted to practice law in Massachusetts in 1986 and is a member in good standing in each state and federal court of the Commonwealth of Massachusetts.

10. Since being admitted to the bar, Attorney Joseph P. Kittredge's area of practice has been predominately in the defense of civil rights actions.  He has trial experience in both the state and federal courts.

11. Joseph P. Kittredge customarily bills clients' $200-250 per hour for his services.

12. Attorney Suzanne Caravaggio was admitted to practice law in Massachusetts in 1996 and is a member in good standing in each state and federal court in the Commonwealth of Massachusetts.

13. Since being admitted to the bar, Attorney Suzanne Caravaggio's area of practice has been predominately criminal and civil litigation.

14. Suzanne Caravaggio's time is typically billed at a rate of $ 175-200 per hour.

15. Attorney Amanda Martin was admitted to practice law in Massachusetts in 2002 and is a member in good standing in each state court of the Commonwealth of Massachusetts.

16. Since being admitted to the bar, Attorney Amanda Martin's area of practice has been predominately in the prosecution of criminal actions. She has trial experience in the state courts.

17. Amanda Martin's time is typically billed at a rate of $ 175-200 per hour.

18. Attorney Jordan Burke was admitted to practice law in Massachusetts in 2006 and is a member in good standing in each state court of the Commonwealth of Massachusetts.

19. Jordan Burke's time is typically billed at a rate of $ 175-200 per hour.
20. In 2002, Attorneys Timothy M. Burke and Brian Rogal were awarded attorneys fees by the Massachusetts Superior Court in the case of <u>Butner, et al. v. Department of State Police</u>, No. 98-1778E.

  21. Attorney's Timothy M. Burke, Brian Rogal, Joseph P. Kittredge, Suzanne Caravaggio, Amanda Martin and Jordan Burke expended 412 hours in the successful defense of this suit.

  22. Attached hereto as Exhibit "A" are itemized statements detailing the matters upon which counsel worked and hours expended on these matters in the preparation and trial of this action.

  23. For information of the Court, counsel show that the Commonwealth of Massachusetts has an obligation to indemnify State Police Officers for certain legal costs incurred in the defense of civil rights actions pursuant to M.G.L. c. 258 §9A. The Commonwealth currently limits such reimbursement to the rate of $125.00 per hour, and the Defendant's counsel accept reimbursement at said rate on those cases where indemnification is applicable. However, counsel are familiar with the hourly rates charged in Boston by attorney's of similar experience and state that rate is a minimum of $300.00 per hour for Timothy M. Burke and Brian Rogal, a minimum of $240 per hour for Joseph P. Kittredge, a minimum of $175 per hour for Suzanne Caravaggio, Amanda Martin and Jordan Burke and that assessment of fees at the market rate is the appropriate standard under F.R.C.P. Rule 11 under 42 U.S.C §1988.

  24. The total amount due for attorneys' fees at the prevailing rates of $300.00 per hour is $73,920.00. The total amount due at the rate of $240.00 per hour is $11,352.00. The total amount due at the rate of $175 per hour is $8,505.00.

  The undersigned state that the foregoing averments and itemization as contained in Exhibit A are true and correct to the best of their knowledge and belief.

  Signed under the pains and penalties of perjury this 5th day of January, 2007.

          Respectfully submitted,

         /s/ Brian Rogal
         Brian Rogal, Esquire
         BBO #424920
         160 Gould Street, Suite 111
         Needham, MA 02494

Certificate of Service

Service is made via the Court's ECF notification system.