UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH BOOK | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | C.A. NO. 04CV-11557-RCL |
| v. | ) | |
| | ) | |
| STATE TROOPER KURT M. FERRAZZANI and | ) | |
| STATE TROOPER ALBERT McKENZIE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 AND FED.R.CIV.P. RULE 11**

**I.    INTRODUCTION**

Plaintiff Joseph Book ("Plaintiff") respectfully submits this Opposition to Defendants' "Motion For Attorneys' Fees Pursuant To 42 U.S.C. §1988 and Rule 11 of the Federal Rules of Civil Procedure." In their Motion, Defendants challenge the judgment, professionalism and ethics of Plaintiff and his counsel, much as they did throughout the trial in this case. Defendants' Motion, however, must be decided on the facts, not rhetoric. Measured against the evidence adduced at trial, Defendants have not come close to demonstrating that this §1983 case was frivolous, unreasonable, or without foundation.

Plaintiff alleged he was arrested for OUI without probable cause, by two police officers whose judgment and objectivity was impaired by their desire to help a fellow police officer. This claim was hardly frivolous. Plaintiff was not intoxicated, and there was not so much as a trace of alcohol in his system; the OUI charge was without merit and was dismissed; and evidence of the questionable conduct by Defendants in connection with Plaintiff's arrest proved sufficient to withstand Defendants' motion for a directed verdict, to warrant a jury instruction on

punitive damages as to Defendant McKenzie, and to require the jury to deliberate for one and a half days before ultimately ruling for Defendants.  Defendants are not entitled to attorneys' fees and are required to bear their own costs of this case.

I.    **STANDARD FOR AWARD OF FEES**

It is firmly established that, as a general rule, litigants must bear their own fees and costs. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975).  Indeed, under the "American Rule," litigants must bear "the single greatest cost" of asserting their legal rights, attorneys' fees, *regardless* of the outcome of the action.  See EIU Group, Inc. v. Citibank Delaware, Inc., 429 F. Supp.2d 367, 369 (D. Mass. 2006) (quoting Comment, *Court Awarded Attorney's Fees and Equal Access to the Courts*, 122 U. Pa. L.Rev. 636, 637 (1974)).  Among the many justifications of this rule is the fact that, "since litigation is at best uncertain[,] one should not be penalized for merely defending or prosecuting a lawsuit." EUI Group, Inc., 429 F. Supp.2d at 372 (citing Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718 (1967)).

Congress has created statutory exceptions to this rule, so as to permit fee-shifting in some contexts to encourage meritorious litigation that benefits the plaintiff and the public interest.  See Blanchard v. Bergeron, 489 U.S. 87, 96 (1989).  Here, Defendants point to two exceptions in support of their Motion: (1) the court's statutorily-created discretion under 42 U.S.C. §1988 to award reasonable attorneys' fees to the prevailing party in an action brought pursuant to §1983; and (2) Rule 11 of the Federal Rules of Civil Procedure.  Defendants are not entitled to an award of attorneys' fees under either theory.

The fee-shifting provision of §1988 was created to "ensure effective access to the judicial process for persons with civil rights grievances." Parker v. Town of Swansea, 310 F. Supp.2d

376, 387 (D. Mass. 2004) (citing Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992)). While

attorneys' fees may be awarded to prevailing §1983 *defendants,* this scenario is rare. See Tang

v. Rhode Island Dep't of Elderly Affairs, 163 F.3d 7, 13 (1st Cir. 1998) ("decisions [under

§1988] to grant defendants their fees are, and should be, rare"). In civil rights cases, "fee-

shifting in favor of a prevailing plaintiff is the rule, whereas fee-shifting in favor of a defendant

is the exception." Casa Marie Hogar Geriatrico, Inc. v. Rivera-Santos, 38 F.3d 615, 618 (1st Cir.

1994). Prevailing defendants may recover attorneys' fees only if they can establish that the

plaintiff's suit "was *totally unfounded, frivolous, or otherwise unreasonable.*" Id. (emphasis

added).

　　　To judge whether this standard has been met, "the court must assess the claim at the time

the complaint was filed." Tang, 163 F.3d at 13. The claim "must have been frivolous,

unreasonable or without foundation at its inception or at some stage of the proceedings prior to

the crucial ruling finding the case without legal merit." Gallerani v. Town of Plymouth, 356 F.

Supp.2d 3, 4 (D. Mass. 2005). As the Supreme Court has explained:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight of logic could discourage all but the most airtight of claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22, (1978).

　　　Decisions from this Circuit affirm that attorneys' fees should be awarded to §1983

defendants only in exceptional cases. In fact, courts have refused to award fees even where the

plaintiff's proof so failed that defendants were entitled to judgment as a matter of law. For

example, in <u>Gallerani</u>, <u>supra</u>, the District Court denied the §1983 defendants' motion for attorneys' fees, despite the fact that the Court invited, and then granted, the defendants' motion for judgment as a matter of law under Fed.R.Civ.P. 50. <u>Gallerani</u>, 356 F. Supp.2d at 5. The Court noted that since it had denied Defendants' motion for summary judgment before trial, "[i]t is hard to see how the plaintiff's pressing forward to trial after such a ruling can be faulted as frivolous." <u>Id.</u>

Likewise, in <u>Crawford v. City of Quincy</u>, 215 F.3d 1311 (Table), 2000 WL 231238 (1st Cir. 2000), the First Circuit reversed the District Court's award of attorneys' fees to the prevailing defendants under §1988, despite the fact that it had granted in part the defendants' motion for judgment as a matter of law at the close of evidence. <u>Id.</u> at *3. The First Circuit explained that, when the plaintiff brought suit, "there was plausible (if circumstantial) foundation for his conspiracy claims." Among other things, the plaintiff had been arrested without apparent cause or police investigation within a few moments of the officer's arrival in the scene. <u>Id.</u> at *4. While the §1983 claims were properly dismissed at the close of trial, the First Circuit emphasized that this was not the proper "coign of vantage." <u>Id.</u> <u>See also</u> <u>Dionne v. Leeman</u>, 1993 WL 370828, at *1 (D. Mass. 1993) (refusing to award attorneys' fees to prevailing defendants under §1988 and Rule 11; finding that "the false arrest claim, although weak, was a triable claim," and noting that the fact the jury found for the defendants did not mean that it was wholly without merit.)

As for Defendants' reliance on Rule 11, the standard for evaluating a defendant's ability to recover fees under §1988 and Rule 11 are closely similar. <u>See</u> <u>Gallerani</u>, 356 F. Supp.2d at 5-6. Rule 11 authorizes the assessment of attorneys' fees against a party and/or his attorney who irresponsibly initiates and/or litigates a cause of action. <u>Kale v. Combined Ins. Co. of Amer.</u>,

4

861 F.2d 746, 756 (1ˢᵗ Cir. 1988). Even claims that lack merit are not *ipso facto* frivolous as the term is to be understood in the context of Rule 11. See <u>Smith v. Robertshaw Controls Co.</u>, 2004 WL 1260097, at * 2 (D. Mass. 2004); <u>citing</u> <u>Boston Pilots v. Motor Vessel Midnight Gambler</u>, 357 F.3d 129, 136 (1st Cir. 2004) (plaintiff "was entitled to test its theory through the summary judgment phase"; "[t]hough ultimately unavailing, plaintiff's efforts' were supported by a marginally colorable foundation and thus not wholly insubstantial or frivolous"); <u>Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.</u>, 171 F.3d 52, 58 (1st Cir. 1999) ("[t]hough that claim lacked merit, it was not so plainly unmeritorious as to warrant the imposition of sanctions. The mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions").

In <u>Smith</u>, the District Court refused to award attorneys' fees to the prevailing defendants despite acknowledging, "with the benefit of hindsight," that "the plaintiff's claims were very weak," and, in fact, "did not survive summary judgment." 2004 WL 1260097, at *2. In refusing to do so, the court noted that it was not fair to say that the plaintiff pursued frivolous claims with an absence of good faith or that the advocacy of the claims was unreasonable. <u>Id.</u>

Additionally, Rule 11 requires, among other things, that a party seeking sanctions serve a copy of the motion on the opposing party at least twenty-one (21) days before filing it with the court. <u>Id.</u> at *2; <u>see also</u> Fed.R.Civ.P. Rule 11. This provision allows the opposing party the opportunity to withdraw or cure the offending document. <u>Smith</u>, 2004 WL 1260097, at *2. While Rule 11, on its face, says nothing concerning the timing of filing motions for sanctions, the advisory committee indicates that motions should be filed "promptly" after determining the basis for the motion. Fed.R.Civ.P. 11 (advisory note of 1993); <u>see also</u> <u>Monahan Corp. N.V. v. Whitty</u>, 319 F. Supp.2d 227, 232 (D. Mass. 2004). Given this "safe harbor" provision, a party

5

cannot delay serving its Rule 11 motion until the conclusion of the case (or judicial rejection of the offending contention)." Smith, 2004 WL 1260097, at *2; (citing Fed.R.Civ.P. 11 (advisory note of 1993)).

A motion for attorneys' fees under Rule 11 is untimely and procedurally defective if made for the first time at the close of trial. See Smith, 2004 WL 1260097, at *2 (denying defendant's motion for attorneys' fees under Rule 11, explaining that defendant, who did not bring the Rule 11 motion until summary judgment had entered, failed to comply with the safe harbor provision of Rule 11); see also Whitty, 319 F. Supp.2d at 235 (denying defendants' motion for attorneys' fees under Rule 11 because it was untimely and failed to comply with the safe harbor "where defendants were aware of the basis for the requested relief more than a year ago but did not file the Rule 11 motion until after the entry of summary judgment.")

In this case, an award of attorneys' fees to Defendants is not warranted, under §1988 or Rule 11. Although Plaintiff was ultimately unsuccessful, it cannot be said that his case was frivolous, unreasonable, or without foundation pursuant to §1988, or that he failed to make reasonable inquiry into the facts pursuant to Rule 11. Furthermore, the motion is not timely within the meaning of Rule 11, and it fails to comply with Rule 11's "safe harbor" provision.

## II.    ANALYSIS

### A.    A Fee Award Under §1988 Is Not Warranted

Defendants now declare that Plaintiff's false arrest claim "was patently frivolous." Memorandum In Support of Defendants' Motion, p. 2. This is a remarkable allegation, given Defendants' failure to move for dismissal or summary judgment prior to trial. Indeed, if Defendants' counsel believed Plaintiff's claim was "patently frivolous," one wonders why they did not seek the early disposition of the case, instead of charging their clients tens of thousands

of dollars in attorneys' fees to conduct pre-trial discovery, take depositions, and prepare for and litigate a claim that purportedly should not have been brought. In fact, Plaintiff's claim was not frivolous, and to the contrary, Defendants' characterization is refuted by the Court's refusal to grant their motion for a directed verdict, its decision to issue an instruction on punitive damages, and the fact that the jury deliberated for a day and a half before finally returning a verdict in Defendants' favor.

In their Motion, Defendants reargue and, in some instances, misrepresent the facts adduced at trial. In doing so, they completely ignore that the issue at this juncture is whether Plaintiff's §1983 claim was "totally unfounded, frivolous, or otherwise unreasonable," as measured at the inception of the case. There was ample evidence to support of Plaintiff's §1983 claim. The fact that Defendants arrested and charged Plaintiff with OUI, notwithstanding that he was not intoxicated and had no alcohol in his system, was a matter of objective proof. The central issue, then, was whether Defendants had probable cause for the OUI arrest. In this regard, Plaintiff alleged that the facts cited by Defendants to establish probable cause were false, and that Defendants' conduct and judgment had been influenced by their knowledge that the motorcyclist involved in the accident with Plaintiff was an off-duty Revere Police Officer who was known to Defendants. At trial, Plaintiff adduced substantial evidence to support his theory of the case.

Defendants now launch a new attack on Plaintiff's account of how the accident occurred. They appear to assume that because the jury ruled in their favor, this Court should conclude that Plaintiff was untruthful and brought a claim based on fabricated evidence. This argument is completely without merit. The question for the jury was whether it was objectionably reasonable for Defendants to believe there was probable cause for Plaintiff's OUI arrest. At trial,

7

Defendants cited the factors relied on to determine whether a suspect is intoxicated. These include a suspect's mental capacity, steadiness on his feet, speech, performance on field sobriety tests, and the smell of alcoholic beverage. Defendants conceded that many of these factors militated against a finding of probable cause. They admitted that Plaintiff was not slurring his speech, acting belligerently, or stumbling around. McKenzie acknowledged that he had never encountered a case where a suspect registered a 0.0 on the breathalyzer test yet smelled alcohol. Thus, much of the evidence at trial centered on Defendants' contention that Plaintiff "failed all" field sobriety tests, and that his alleged inability to explain how the accident occurred was probative of intoxication.

Plaintiff proved he did not fail the three field sobriety tests. McKenzie testified at trial that when he gave the Plaintiff the heel-to-toe test, Plaintiff told him he could not perform the test because of his physical condition. McKenzie also admitted that when a suspect advises he cannot perform a field sobriety test due to a physical condition (such as obesity, old age, an injury, etc.), he does not hold that against the suspect. Moreover, Plaintiff's testimony that he was not even asked to perform the one-leg stand test was corroborated by Defendants' admission that a suspect's age and physical condition is taken into account when administering field sobriety tests, and the self-evident fact that it would be preposterous to require a 79 year old man who walked with a limp to stand on one leg for 30 seconds. In sum, McKenzie knew that Plaintiff did not "fail all" field sobriety test(s), and his representations to the contrary, which were relied on in arresting Plaintiff, were inaccurate and misleading. Thus, there was evidentiary support for Plaintiff's argument that McKenzie not only lied about his performance on field sobriety tests, but also intentionally misrepresented facts in the accident report. This evidence

8

alone is fatal to Defendants' attempt to meet the standard for awarding fees under §1988 or Rule 11.

In their haste to meet the §1988 standard, Defendants make factual allegations that are inaccurate, and are not supported by any reasonable view of the trial record. For example, Defendants argue "plaintiff concedes that he told the police at last once that he had a sip of alcohol." Memorandum in Support of Defendants' Motion, p. 2. This is false, as Defendants surely know. Indeed, the assertion in Defendant Ferrazzani's police report that Plaintiff made such a concession prior to his arrest was one of the most hotly disputed issues at trial.

Defendants also argue that Plaintiff's account of how the accident occurred was "an obvious fabrication" and was "factually impossible." Id. Yet, Defendants fail to point to any part of Plaintiff's account that is inconsistent with the evidence. There was nothing implausible about Plaintiff's position that the accident occurred because Rizzutti and Fabich were weaving in and out of a long line of stopped traffic. Rizzutti's trial testimony supported Plaintiff's position. In contrast, Defendants' argument that Plaintiff's SUV "dragged" Joseph Rizzutti some 30-40 feet (a fact cited as well in support of Plaintiff's OUI arrest), was unsupported by any objective evidence, and logically implausible given the minor damage to Rizzutti's motorcycle. Defendants offered no photographs, or other evidence to corroborate their version of how the accident occurred.

Further, Defendants argue "plaintiff knew long ago before this trial started that all of the witnesses to the accident confirmed that Mr. Rizzutti had been in front of him and that the plaintiff was at fault in the accident." Id., p. 3. This is false as well. Defendants presented no witness to testify that Rizzutti and the second motorcyclist, Craig Fabich, were traveling in front of Plaintiff. For Defendants to argue otherwise is disingenuous, particularly in light of their

counsel's objections at trial to Plaintiff's attempts to ask Defendants whether they made any inquiry of any witness as to whether Rizzutti and Fabich had been traveling in front of Plaintiff, or weaving in and out of traffic.

Finally, Defendants argue that Plaintiff did not present evidence of lost business revenues, and attempted to include within his damages claim the money paid to settle the underlying personal injury suit with Rizzutti. These arguments are irrelevant. The extent of Plaintiff's recoverable damages has no bearing on the merits of Plaintiff's §1983 claim. Furthermore, Defendants' implication that Plaintiff argued at trial for recovery of business losses and the settlement payment is inaccurate as well.

**B.    Rule 11 Sanctions Are Not Warranted**

For the reasons cited above, Defendants request for fees under Rule 11 is untimely and procedurally infirm, and should be denied. Even were the Court to consider the merits of Defendants' request, it should be denied.

As noted, the standards governing Defendants' request for attorneys' fees under §1988 and Rule 11 are closely similar. Defendants' Motion does not draw any distinction between the two standards, or otherwise suggest that recovery would be appropriate under one standard but not the other. However, since Defendants' Motion attacks the conduct of Plaintiff's trial counsel, these issues are addressed now.

Defendants suggest that Plaintiff's trial counsel should have concluded, upon reviewing the case, that Plaintiff's §1983 claim was frivolous. As detailed above, there was ample evidence to show that this claim had merit. Furthermore, Plaintiff's counsel did screen the case, and voluntarily dismissed claims against two of the four police officers who had been named in Plaintiff's Complaint.

Defendants also argue that counsel "protracted this case by continuing to argue for the introduction of irrelevant evidence." Defendants do not cite any facts to support this argument. Defendants may be referring to counsel's attempts to question Defendants and other witnesses about where Rizzutti and Fabich were traveling before the accident, and whether Defendants made any inquiry to determine if the motorcyclists were weaving in and out of traffic. Defendants objected to these lines of questioning on the ground of relevance. Yet, Defendants made these questions relevant by arguing – at trial as in this Motion – that probable cause existed for Plaintiff's OUI arrest in part because Plaintiff did not see the motorcycles before the accident, and could not explain where they came from.

With respect to Defendants' argument that Plaintiff's counsel intentionally misled the Court and counsel during his cross-examination of McKenzie, Defendants made this argument at trial, and the District Court appropriately declined to award sanctions in connection with this incident. Plaintiff's counsel previously explained to the Court that creating a misleading impression was most certainly not his desire or intention. By showing McKenzie the first page of the Massachusetts State Police Student Manual (the "Student Manual"), counsel sought to ascertain if McKenzie could confirm that training materials he received at the State Police Academy were – as the cover of the Student Manual states – issued by the NHTSA, thereby establishing McKenzie's familiarity with the NHTSA. McKenzie responded in the affirmative to this point. This response provided the necessary link to counsel's subsequent, foundational questions about whether McKenzie was aware that the NHTSA established standards on field sobriety testing. McKenzie responded he was aware that NHTSA did this. Through these questions, counsel was attempting to establish a foundation for questioning McKenzie about his awareness of NHTSA standards concerning limits on the use of two components of the Standard

11

Field Sobriety Test ("SFST") battery – the walk-and-turn, and the one-leg stand – when suspects are over 65 years of age or have mobility problems. The State Police Student Manual actually references, and summarizes, the NHTSA studies that produced the standards used to question McKenzie.

Plaintiff and his counsel brought this case in good faith, in reasonable reliance on facts (some of which Defendants did not even dispute) that could lead a trier of fact to conclude that there was no probable cause to arrest the Plaintiff for OUI. The fact that Plaintiff and Defendants offered factually different accounts of the events that transpired on June 6, 2001 does not render Plaintiff's case "patently frivolous," as Defendants claim, nor does the fact that Plaintiff may have been unable to explain all of the events of June 6, 2001. Indeed, part of Plaintiff's theory of the case was that Defendants failed to properly investigate the accident and rushed to judgment upon learning that the victim of the accident was a Revere police officer.

Again, Defendants' contentions that the Plaintiff's case was "wholly incredible," "an obvious fabrication," and "factually impossible." are belied by the fact that it took the jury a day and a half of deliberations to reach a verdict. What is more, at Plaintiff's request, and over Defendants' vigorous objections, the Court charged the jury on the standard for awarding punitive damages against McKenzie, acknowledging that evidence had been presented to the jury that could support such an award. With respect to the Plaintiff's plea to sufficient facts in connection with the underlying criminal action, Plaintiff consistently took the position that the plea did not equate with admitting guilt – and cited to case law in support of this position.

In sum, Defendants have failed to demonstrate that this Court should deviate from the well-established rule that litigants should bear their own costs of litigation, and Plaintiff should not held accountable for the Defendants' attorneys' fees.

12

## Conclusion

In light of the foregoing, Plaintiff Joseph Book respectfully requests that Defendants' Motion For Attorneys' Fees be denied.

Respectfully submitted,

JOSEPH BOOK
*By his attorneys*,


/s/ Christopher H.M. Carter
Christopher H.M. Carter
BBO #561146
Laura B. Angelini
BBO #658647
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
ccarter@haslaw.com
langelini@haslaw.com

Dated: January 19, 2007


## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January, 2007, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


/s/ Christopher H.M. Carter


#622356